IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGELIO ORTEGA HERNANDEZ, | : | CIVIL ACTION |
| on behalf of himself and others | : | |
| similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| EARTH CARE, INC., SCOTT RISBON, | : | |
| and KIM RISBON | : | NO. 15-5091 |

### MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                                 July  25, 2016

Plaintiff has filed an unopposed motion to approve the settlement in this Fair Labor Standards Act ("FLSA") collective action. For the reasons that follow, I will certify the collective action and settlement class and approve the settlement.

### I.   FACTUAL BACKGROUND

Mr. Ortega brought this collective action on behalf of himself and other similarly situated seasonal landscape laborers from Mexico who were employed by Earth Care, Inc., ("Earth Care") during 2010 through 2014, alleging that Defendants failed to pay the wage rates required by the visa program that enabled the laborers to work for Earth Care. See Doc. 9 ¶¶ 2, 4, 14, 24.  Defendants dispute the class allegations and that they violated the wage laws.  See Doc. 24-1 ¶ 3.

Early in the litigation, the parties began settlement discussions and came to an agreement.  On April 13, 2016, I conditionally certified the collective action and settlement class and preliminarily approved the settlement agreement.  See Docs. 27 & 28.  Pursuant to the settlement agreement, the initial opt-in deadline expired on June 15,

2016, see Doc. 24-1 at 14-17, and in preliminarily approving the settlement, I gave counsel permission to seek final approval once the initial opt-in data had been collected. Doc. 27 at 8.[1]

## II.     DISCUSSION

### A.     Certification

As explained in my earlier Memorandum, certification is a two-step process. During the first or notice stage, the court "determines whether similarly situated plaintiffs do in fact exist." Amadi v. Cardo Windows, Inc., 299 F.R.D. 68, 78 (D.N.J. 2014) (citing Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013); Zavala v. Wal Mart Stores Inc., 691 F.527, 535 (3d Cir. 2012)).  At the second or final stage of certification, the court "determines whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Zavala, 691 F.3d at 536 & n.4.

---

[1] The class is actually broken into two categories based on ease of notification.  The first are the class members re-employed by Earth Care in 2016 ("the reemployed class members").  The reemployed class members were required to submit their opt-in forms by June 15, 2016.  Doc. 24-1 ¶ 44.  The claims period for the second group of potential class members, those not reemployed by Earth Care in 2016 ("the non-returning workers"), closes on February 28, 2017.  Id. ¶ 70.  According to the settlement agreement, on May 5, 2016, Representative Counsel sent notice of the action and opt-in forms to the last known address of the potential class members who were not reemployed by Earth Care.  Id. ¶ 53.  A second notice and opt-in form will be mailed to those who have not responded in November 2016.  Id. ¶ 64.  From December 2016, through February 24, 2017, a claims agent will arrange for direct outreach (as described in the settlement agreement) to locate the potential class members who have not responded.  Id. ¶¶ 67-68.

With the expiration of the initial notice period, the court is now in a position to assess the class.  Of the 57 re-employed class members, 46 have returned the form, 41 have opted in to the action and 5 have not.[2]  Doc. 30-1 ¶ 8.  Of the 37 class members who were not re-employed by Earth Care, 16 have returned the form, all of whom have opted in.  Doc. 30-1 ¶ 12.  Thus, 57 of 94 members of the class have opted in.

As also explained in my earlier Memorandum, in completing the certification of the collective action, the court must determine whether Plaintiffs are similarly situated.  See Lovett v. ConnectAmerica.com, Civ. No. 14-2596, 2015 WL 5334261, at *2 (E.D. Pa. Sept. 14, 2015) (citing Singleton v. First Student Mgmt.,LLC, Civ. No. 13-1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement absent specific argument on issue); Bredbenner v. Liberty Travel, Civ. Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (granting final notification prior to approving settlement of FLSA collective action)).  The burden is on Plaintiffs and "the court must consider a number of factors, including but not limited to:  'whether the plaintiffs are employed in the same corporate department, division and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment.'"  Lovett, 2015 WL 5334261, at *2 (quoting Keller v. TD

---

[2]An additional re-employed class member returned his opt-in form after expiration of opt-in deadline.  Doc. 30-1 ¶ 9.  The settlement agreement gives Defendants the discretion to engage in settlement discussions with class members who submit their claim forms late.  Id.

Bank, N.A., Civ. No. 12-5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014); Zavala, 691 F.3d at 536).

Although there has been no supplemental information regarding the opt-in Plaintiffs, based on the information provided when I conditionally certified the class, I conclude that Plaintiffs are similarly situated. Based on the allegations in the Amended Complaint and those contained in the proposed settlement agreement, each of the class members was a seasonal H-2B employee[3] of Earth Care in 2013 and/or 2014. Doc. 24-1 ¶ 5. Each was allegedly paid less than the minimum wage required by the H-2B visa program. Id. ¶ 4. The settlement agreement provides class members with the full amount of unpaid wages which Representative Counsel believed they could fairly establish at trial along with a payment for reimbursement for travel and visa costs for each year the worker was employed by Earth Care. Doc. 24-1 ¶¶ 14-17, 22. I conclude that the members of the collective action are similarly situated and will certify the collective action and the settlement class.

### B.     FLSA Settlement

The purpose of the FLSA is "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and wellbeing and the free flow of good sin interstate commerce." Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp.2d 474, 476 (E.D. Pa. 2014) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)). "The guiding principle of the Court's inquiry in

---

[3] The term H-2B refers to the visa program which permitted Earth Care to recruit foreign workers to fill unskilled, non-agricultural positions when there was a shortage of available American workers. Doc. 9 ¶ 2.

determining whether to approve the settlement of a FLSA collective action is ensuring that an employer does not take advantage of its employees in settling their claim for wages." <u>Dietz v. Budget Renovations & Roofing, Inc.</u>, Civ. No. 12-0718, 2013 WL 2338496, at *2 (M.D. Pa. May 29, 2013). When the court is asked to approve an FLSA settlement, it must "scrutiniz[e] the settlement for fairness" <u>Dees v. Hydradry, Inc.</u>, 706 F. Supp.2d 1227, 1235 (M.D. Fla. 2010) (quoting <u>Lynns's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1353 (11th Cir. 1982)), and "determine that it resolves a bona fide dispute." <u>Bredbenner</u>, 2011 WL 1344745, at *18 (quoting <u>Lynn's Food</u>, 679 F.2d at 1354). "Where, as here, settlement negotiations took place before class certification and the parties seek class certification and settlement simultaneously, the Court must be 'doubly careful in evaluating the fairness of the settlement.'" <u>Keller</u>, 2014 WL 5591033, at *9 (quoting <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.</u>, 55 F.3d 768, 805 (3d Cir. 1995)).

There is no question that there is a bona fide dispute at the root of this case. The dispute involves payment of a regulatory minimum wage and the calculation of overtime. Disagreements over "hours worked or compensation due" clearly establish a bona fide dispute. <u>Bredbenner</u>, 2011 WL 1344745, at *18 (quoting <u>Hohnke v. United States</u>, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005)). Therefore, I turn my attention to the fairness of the settlement.

In evaluating an FLSA compromise, the court scrutinizes the agreement in two steps.

5

> First, the court should consider whether the compromise is fair and reasonable to the employee (factors 'internal' to the compromise). If the compromise is reasonable to the employee the court should inquire whether the compromise otherwise impermissibly frustrates the implementation of the FLSA (factors 'external' to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

Lovett, 2015 WL 5334261, at *3 (quoting Brumley v. Camin Cargo Control, Inc., Civ. Nos. 08-1798, 09-6128, 10-2461, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012); Dees, 706 F. Supp.2d at 124).

1. Fairness – Internal Factors

The factors the court should consider in evaluating the fairness of a settlement in an FLSA case are those used in class action settlements. See Brumley, 2012 WL 1019337, at *4-5 (utilizing factors from Girsh v. Jepson, 521 F.2d 153, 157-58 (3d Cir. 1975); In re Chickie's & Pete's Wage & Hour Litig., Civ. No. 12-6820, 2014 WL 911718, at *2-3 (E.D. Pa. Mar. 7, 2014) (same). Thus, the court should consider

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Brumley, 2012 WL 1019337, at *4-5 (quoting Girsh, 521 F.2d at 157).

In preliminarily approving the settlement, I alerted the parties to the fact that it was difficult at that stage to assess the factors governing the reasonableness of the settlement. Doc. 27 at 6-7. Specifically, I asked counsel to address the reaction of the class to the settlement, the reasonableness of the fees, and Earth Care's ability to withstand a greater judgment. Doc. 27 at 6. In seeking final approval, the parties have supplied sufficient information for the court to proceed.

After minimal discovery, both sides recognized the benefits of compromise in this case which involves 94 seasonal workers from Mexico. Counsel recognized that they faced both geographical and communications hurdles, and the discovery process would be long, involved, and costly. I oversaw some of the settlement discussions, which encompassed many hours of negotiation in my courtroom and on the telephone and significantly more time by counsel working out details without my direct oversight. The parties reached a settlement after arm's-length negotiations, at times heated, concerning claims and defenses respecting the 94 proposed Plaintiffs, and details of notice, translation, and taxation. The agreement provides for payment of all unpaid minimum wages and overtime, Doc. 24-1 ¶¶ 14-17, 20-21, and the reimbursement of $440 per year per worker for pre-employment travel and visa costs. Id. ¶ 22.[4]

Reaction by the class members has been overwhelmingly positive. At this point, 46 of 57 (80.7%) of the reemployed class members have responded, 41 of these 46 (89.1%) have opted in to the settlement class, with only 5 (10.9%) opting out. Just under

---

[4]There is a separate provision for five employees who received cash payments for wages. Doc. 24-1 ¶¶ 18-19.

7

half (16 of 37) of the non-returning workers have returned their forms, and every one has opted in to the settlement class.[5] Thus, with an overall response rate thus far of 66%, 91.9% of those that have returned the notice have opted in to the settlement class.

The court also approves the requested attorneys' fees. The court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Because the language of the FLSA contemplates that the plaintiff-employee should receive his full wages, plus penalty, without incurring any expense for legal fees or costs, the FLSA requires the Court to evaluate the reasonableness of counsel's legal fees to assure both that counsel is adequately compensated and no conflict of interest taints the amount the wronged employee recovers under the settlement agreement." Brown v. TrueBlue, Inc., Civ. No. 10-514, 2013 WL 5408575, at *3 (M.D. Pa. Sept. 25, 2013) (citing Poulin v. Gen. Dynamics Shared Res., Inc., (W.D. Va. May 5, 2010)).

In this case, Representative Counsel negotiated their fees independently of the terms of the settlement for members of the settlement class, and agreed to cap their fees at $35,000, far below the lodestar value of the work performed. Doc. 30-1 ¶¶ 45, 47. According to Representative Counsel's declaration, based on the calculations provided by Earth Care, the average gross claim per class member is $8,775. Doc. 30-1 ¶ 23.[6] Earth

---

[5] As noted, the settlement agreement provides for additional notice and opportunity to opt in for the non-returning workers who have not responded. Supra n.1.

[6] According to the settlement agreement, Earth Care was supposed to calculate the amount due to an individual who opted in to the settlement within 14 days of receipt of the opt in form. Doc. 25-1 ¶ 57. According to Representative Counsel, Earth Care

8

Care has estimated that the gross sum payable to the opt-in plaintiffs exceeds $500,000. Doc. 30-1 ¶ 22. According to Representative Counsel's calculations, if the remaining 21 non-returning workers opt in to the settlement and have equivalent claim values, the settlement will have an approximate value of $700,000 (including the amounts payable to Mr. Ortega). Id. ¶ 23.[7] Under these circumstances and after reviewing the time sheets attached to Representative Counsel's declaration, see Doc. 30-1 at 34-39 (Ms. Dorenbosch), 41-43 (Mr. Read), the $35,000 fee is abundantly reasonable, representing between 5% and 7% of the settlement. See Brumley, 2011 WL 1344745, at *18-20 (approving award of 39% of common fund); Bredbenner, 2011 WL 134475 (approving award of 32.6% of common fund); Gilliam v. Addicts Rehab Ctr. Fund, Civ. No. 05-3452, 2008 WL 782596 (S.D. N.Y. Mar 24, 2008) (approving award of one-third of settlement fund); deMunecas v. Bold Food, LLC, Civ. No. 09-440, 2010 WL 332580 (S.D.N.Y Aug. 23, 2010) (same). Here, counsel specifically negotiated the fee so as not to deprive the employees of their wages. Doc. 30-1 ¶ 45.

---

notified him that it had "re-considered the issue of producing proposed calculations of the amount due each worker" and decided to defer producing those calculations and the supporting documentation until final approval of the settlement agreement. Doc. 30-1 ¶ 22. Although I am troubled by Earth Care's repudiation of its responsibility under the settlement agreement, Plaintiffs' counsel does not object to the suggested amendment, and his representation that the "total gross sum to [be] paid to the opt-in plaintiffs exceeds $500,000," presents sufficient information to assess the reasonableness of the fees payable under the agreement. Id.

[7]Including those who have opted in, and the non-returning workers who have not yet responded, a total of 78 workers would be included in the settlement. Utilizing the average gross claim of $8,775, the total is $684,450 (excluding the amounts payable to Mr. Ortega).

With respect to the amount payable to Mr. Ortega, I also conclude that payment is reasonable. In addition to the payments to which he is entitled under the settlement agreement, the agreement provides for a lump sum payment of $7,500 to Mr. Ortega. Doc. 24-1 ¶ 24. In my earlier Memorandum, I referred to this as an "incentive payment." Doc. 27 at 6-7. In his declaration, Representative Counsel corrects my mischaracterization and explains the basis or the calculation of the payment, including Mr. Ortega's claims arising in 2010 through 2012, for which the settlement provides no compensation, unreimbursed pre- and post-employment travel and visa expenses incurred which exceeded the $2,500 allotted for this purpose, and an amount in exchange for Mr. Ortega's agreement to give up rights to future employment with Earth Care. Doc. 30-1 ¶¶ 25-43.

Considering all of the Girsh factors,[8] I conclude that the settlement is fair to the class members. The settlement came about after extensive arm's-length negotiations and resolves a bona fide dispute over underpaid wages. The settlement provides for compensation to the "Settlement Class members for the full value of underpaid H-2B prevailing wage rates in 2013 and 2015 [sic]." Doc. 30-1 ¶ 46.[9] This amount will not be reduced by counsels' fees or costs or by the additional payment to Mr. Ortega.

---

[8]Although no information has been provided to the court regarding Earth Care's ability to withstand a greater judgment, see Doc. 30-1 ¶ 15, considering the other complexities that the litigation posed, I see no unfairness in the settlement on this basis.

[9]The Settlement Agreement actually provides for full payment of underpaid H-2B wages in 2013 and 2014. Doc. 24-1 ¶ 14.

Additionally, the court is satisfied with the reasonableness of the counsel fees and the additional fee payable to Mr. Ortega.

### 2. Fairness – External Factors

Finally, in considering the fairness of the compromise, the court must consider whether the agreement frustrates implementation of the FLSA. The underlying goal of the FLSA is to "protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). Courts have found that confidentiality provisions in FLSA settlement agreements undermine the goal of the FLSA by permitting retaliation through enforcement of the confidentiality provision. Brumley, 2012 WL 1019337, at *7.

Here, I find that that the agreement promotes implementation of the FLSA. By its own terms, the agreement required Earth Care to facilitate communication with the reemployed class members, which comprise more than 60% of the class. Because more than 70% of the reemployed class members have opted in to the settlement, it appears that the class has no fear of retaliation on the part of Earth Care. Recognizing the potential problems in notifying the non-returning class members, in the agreement, counsel provided for several methods of contact, including direct outreach by a Claims Agent to locations in Mexico where class members permanently reside. Doc. 24-1 ¶¶ 66-68.

Although Mr. Ortega gave up the opportunity for reemployment with Earth Care, the agreement provides for compensation for this concession. Doc. 30-1 ¶ 41. There is

no confidentiality provision and the settlement is not sealed.[10] Additionally, the agreement does not bar claims by class members who chose to opt out of the settlement.

## III. CONCLUSION

As explained above, the parties have established that Plaintiffs are similarly situated. Therefore, I will certify the collective action and the settlement class. I also conclude that the settlement is a fair and reasonable resolution of the claims asserted by the class for underpaid wages. The fees, negotiated separately, are undeniably reasonable in light of the hours and work devoted to this case. Finally, the Agreement does not undermine the purpose of the FLSA. Therefore, I will approve the settlement.

An appropriate Order follows.

---

[10]Although the Agreement is not sealed, there is a Confidential Annex to the Agreement which contains an anti-retaliation provision and identifies an employee by name. See Doc. 24 at 2. To maintain the employee's anonymity, the parties requested that the Annex not be made part of the record. I find that this provision does not undermine the goal of the FLSA, but protects an employee who provided assistance in locating class members.